FILED

2021 May-24 PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**In the United States District Court
For the Northern District of Alabama
Northeastern Division**

| | | |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| **v.** | ) | **Case no. 5:19-cr-00482-LSC-HNJ** |
| | ) | |
| **Justin Beatty** | ) | **Sentencing Memorandum** |

Justin Beatty deserves to spend decades in prison for his crimes. His depraved actions impeded the minor victims from fully enjoying the healthy and happy childhood that should be any child's birthright. Mr. Beatty did not have such a childhood himself, for many reasons, including but not limited to mental health struggles and the unspeakable, incestuous sexual abuse inflicted on him by an otherwise neglectful mother.

For these and other factors discussed herein and in the sealed appendices, Mr. Beatty respectfully asks this Court to send him to prison for **390 months** (32.5 years), which approaches the high end of the 324-to-405-month guidelines range and exceeds the low end of the range the government asks this Court to apply. A 390-month sentence is the punishment that fits both the crime and the criminal, and careful review of the statutory sentencing factors reveals that the 600-month sentence requested by the government is unwarranted.

## I.   Neglect and abuse, including incestuous sexual abuse by Mr. Beatty's mother, robbed him of his childhood.

Mr. Beatty's parents weren't interested in the job. They housed him in a separate part of the family home, and he was left to prepare and serve his own meals before his fifth birthday. (App. A at 6.) Screens, from television to video and computer

games, were the focus of Mr. Beatty's existence. His parents left him alone with his screens, and frequently gave him new games and gaming systems to keep him occupied. Mr. Beatty had access to food and shelter, and transportation to school, but scant other interaction with his mother and father.

What interaction Mr. Beatty did have with his parents was negative. He witnessed his father's alcoholism and mental illness at work, culminating in abuse of both him and his mother. (App. A at 3.) Screens and gaming were a respite for Mr. Beatty from his father, who would drink heavily, "smack" him, refer to him as "worthless," and address him as "little s**t."[1] (*Id*. at 6.) Mr. Beatty began cutting himself in another attempt to cope. (*Id*. at 8.) He was heavily medicated from age 3 up until middle school, but with no discernible positive effect. (*Id*. at 5, 8.)

Aside from buying him video games, the most attention Mr. Beatty's absentee mother ever showed him was far from maternal, or loving: it was incestuous sexual abuse. For a nearly four-year period, while he was approximately 9-13 years old, Mr. Beatty's mother used her young son to gratify her warped sexual desires. Reportedly once a victim herself of similar abuse at her own father's hands, Mr. Beatty's mother sexually abused him by performing sex acts on him, and making him reciprocate. She also introduced him to internet pornography, a regrettable milestone in Mr. Beatty's life. (App. B at 4.)

The sexual abuse stopped when Mr. Beatty was approximately 13, and his parents divorced. For a time, he would see and hear from his mother, and then she

---

[1] Later in Mr. Beatty's life, his father received treatment and today the two have a much better relationship.

stopped contacting him. The two have not spoken in years. Mr. Beatty's father, who began to receive treatment for his mental health challenges, curtailed his substance abuse, and become more of a parent to his son, had sole custody of Mr. Beatty. The two relocated often due to the father's frequent job changes, and Mr. Beatty never had a consistent school experience or a circle of friends. His trauma was unidentified and untreated. In short, Mr. Beatty lived to play video games, doing the bare minimum at school and, later, at work, before coming home to game late into the night before repeating the process the next day.[2]

Robbed of a normal childhood, to say nothing of a healthy sexual development, and unable to manage the co-occurring manifestation of trauma and undiagnosed mental health disorders, Mr. Beatty was arrested for possession of child pornography in 2012, at age 22. He was granted leniency then, but without the benefit of insight and treatment for his condition, Mr. Beatty's conduct at issue here came to light in 2014. He then repeated the conduct in 2015, leading to his state court conviction and prison sentence. Mr. Beatty, when released in January of 2018, made halting progress, including living independently and holding a series of jobs. But his treatment needs remained unidentified and unaddressed, and he was again caught with child pornography when arrested in the instant case.

---

[2] This set the pattern for much of Mr. Beatty's life to date. Since middle school, Mr. Beatty's "routine has been to go to school or work, get home and eat briefly, and game for continuous hours before sleeping less than a few hours and going back to school or work." (App. A at 16.) Whenever Mr. Beatty was not gaming, he was "thinking about it all the time, more or less." (*Id.*)

**II.      Summary of Mr. Beatty's mental illnesses.**

Up until now, Mr. Beatty's long-standing mental illnesses "have largely gone unidentified and untreated." (App. A at 41.) Dr. Caroline Parrott evaluated Mr. Beatty across multiple sessions totaling more than 8 hours. She also interviewed some of his relatives. Following this process, Dr. Parrott diagnosed Mr. Beatty with multiple mental health disorders, which are detailed in the attached Forensic Psychological Evaluation some of which[3] are summarized below.

Among the most prominent and overarching of Mr. Beatty's mental illnesses is his **Post-Traumatic Stress Disorder (PTSD)**, with dissociative symptoms. (App. A at 33-34.) The genesis of this disorder was the above-described abuse and neglect in childhood, particularly the sexual abuse by Mr. Beatty's mother. Dr. Parrott writes, "PTSD is associated with self-destructive, impulsive, and risk/reckless behavior and poor decision-making"—all factors that are illuminating in light of the crimes at issue. (*Id.* at 34.) Mr. Beatty's PTSD co-occurs with **Social Anxiety Disorder**, which explains "some of his autistic-like social and communication defects." (*Id.* at 34.) His **Major Depressive Disorder, with Severe Anxious Distress** leads him to experience periods of hypomanic symptoms, including but not limited to "increased risky behavior." (*Id.* at 35.)

Relatedly, Mr. Beatty suffers from **Other Specified Disruptive, Impulse-Control, and Conduct Disorder (Hypersexual)**. Dr. Parrot explains this

---

[3] In addition to those noted herein, Dr. Parrott provisionally diagnosed Mr. Beatty with the following disorders: Avoidant Personality Disorder; Other Specified Personality Disorder; Attention-Deficit Hyperactivity Disorder (ADHD); and Other Specified Sleep-Wake Disorder, Specifically Recurrent Isolated Sleep Paralysis. *See* App. A at 37-40.

condition, with respect to Mr. Beatty, as "a chronic hypersexual disorder characterized by diminished control over frequent and excessive sexual urges, thoughts, and/or behaviors that are recurrent and persistent." (*Id*. at 36.) Mr. Beatty's **Internet Gaming Disorder**, which Dr. Parrott characterized as "severe," is a mental illness that is associated with Impulse-Control Disorders, as well as with physiological and behavioral changes in brain functioning. (*Id*. at 37.)

Finally, Mr. Beatty's **Avoidant Personality Disorder** (AVPD) is notable. Individuals with this mental illness isolate themselves from others and eschew relationships to protect themselves from perceived rejection, ridicule, and abuse. Importantly, Dr. Parrott traces Mr. Beatty's AVPD to his parents' appalling treatment of him in childhood and adolescence. This stems from the fact that a person's personality is shaped in significant part by his early attachment with primary caregivers. (*Id*. at 37-38.) Early attachment affects how individuals view themselves and where, as with Mr. Beatty, that early attachment is insecure, those individuals suffer from anxiety, depression, and dysfunctional attitudes. (*Id*. at 38.)

### III.   Mr. Beatty's behavior was learned, and with proven treatment it can be unlearned, sharply reducing his risk of recidivism.

Taken together, Mr. Beatty's trauma and corresponding mental illnesses have manifested in maladaptive behaviors to cope with repressed anger, anxiety, and depression. (App. A. at 29, 37, 39, 41.) He never developed healthy coping mechanisms or adaptive behaviors, and instead even as an adult has defaulted to maladaptive behaviors learned during his traumatic childhood, most prominently escape in the

fantasy world of gaming, and hypersexual behavior that manifests in actions inappropriate at best, criminal at worst. (*Id.* at 41.)

Fortunately, Dr. Parrott reports that Mr. Beatty's conditions are treatable, and that he is amenable to treatment. (App. A at 41.) The particular combination of Mr. Beatty's various mental illnesses make treatment a challenge, and calls for a trauma-based approach. That is, "due to Mr. Beatty's PTSD, attachment disruptions, and personality pathology that co-occur with his other mental illnesses," his treatment "must address the full picture of his mental health problems comprehensively to effectively treat his problems in other areas (i.e. depression, social anxiety, panic, maladaptive interpersonal functioning, hypersexuality, gaming)." (*Id.*)

Cognitive Behavioral Therapy (CBT) is an empirically-proven treatment that often results in "clinically significant, functionally meaningful and lasting improvement for those with social anxiety, panic, depression, PTSD, as well as hypersexual disorder and internet gaming [disorder]." (App. A at 42.) It is effective in cases, such as Mr. Beatty's, where the individual has Avoidant Personality Disorder. (App. A at 43.) Further, a specialized CBT treatment, Social Skills Training, is a supplemental component that has been successful in treatment individual with "impaired social cognition." (App. A at 42.)

Dr. Parrott's additional treatment recommendations include that Mr. Beatty be evaluated for a medication regimen (but only as a supplement to therapy, not in lieu of it); that he be monitored for suicidal ideations and for symptoms of Bipolar II disorder; and that his therapy be structured toward individual treatment, with group

therapy added only as he becomes more able to function in such settings. (App. A at 44-45.) She also suggested that educational and vocational programming would benefit Mr. Beatty's recovery. (App. A at 45.)

Dr. Parrott's ultimate conclusion was that "Mr. Beatty can make meaningful and lasting improvements in his emotional, cognitive, and interpersonal well-being," and such treatment will "likely improve his ability to navigate life's circumstances and relationships in adaptive, healthy ways." (App. A at 46.)

## IV. A 390-month sentence is sufficient punishment, while a 600-month sentence is far greater than necessary under the 18 U.S.C. § 3553(a) factors.

Even notwithstanding the guidelines range,[4] a 600-month sentence is excessive given the mitigating factors present here, while a 390-month sentence respects those factors while still affording due weight to the aggravating factors.

a. Nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of Mr. Beatty's crimes are depraved. By posing as a peer and communicating with the minor victims, Mr. Beatty in turn charmed, manipulated, and threatened them into producing the obscene material at issue here. It is every bit a form of child abuse.

These factors are duly accounted for in the guidelines calculation and resulting sentencing range from which Mr. Beatty's request for a 390-month sentence is drawn.

---

[4] In determining whether to sentence a defendant outside the guidelines, a district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Ruan*, 966 F.3d 1101, 1171 (11th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). As the Supreme Court has noted, it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

The victims' ages and Mr. Beatty's misrepresentation of his identity over the internet both enhanced his guidelines range.[5] Mr. Beatty's actions against the victims at issue in the counts to be dismissed under the plea agreement, Minors 3, 4, 5, and 6, were taken into account (along with the counts of conviction that pertain to Minors 1 and 2) through application of the 5-level enhancement that was applied pursuant to USSG §4B1.5(b).[6] Other aggravating factors emphasized by the government do not justify a 600-month sentence, but Mr. Beatty's request for a 390-month sentence does account for these realities in a proportionate manner.

b. <u>The needs to protect the public, provide Mr. Beatty with necessary treatment, and promote deterrence, 18 U.S.C. §§ 3553(a)(2)(B), (C), (D).</u>

The need to protect the public from further crimes by Mr. Beatty is intertwined with the need to provide him necessary treatment in the most effective manner. As Dr. Parrott's evaluation explains, there are proven treatments that can repair the damage that Mr. Beatty endured—treatment which Mr. Beatty did not have after his first arrest in 2012, the federal search warrant in 2014, or his release from Alabama state prison in 2018. With intensive, targeted psychological treatment, Mr. Beatty would leave custody a very different man than he was at the time he committed these crimes years ago, and from the man he is as he stands before this Honorable Court for sentencing. And the mental health treatment Mr. Beatty receives in the BOP can be built upon by continuity of mental health care while on a term of supervised release up to Mr. Beatty's lifetime. His supervised release conditions can also include other

---

[5] *See* PSR at ¶¶ 69-70, 77-78.

[6] *See* PSR at ¶ 91.

targeted restrictions on his use of internet-enable devices that will also serve to guard against recidivism.

Mr. Beatty's age at release under the requested sentence will further counsel against justifying a 50-year sentence to protect the public. Under the requested sentence, Mr. Beatty will be in his sixth decade when released. According to the U.S. Sentencing Commission, offenders 65 and older present the lowest statistical risk of recidivism.[7] Offenders of this demographic have the lowest rearrest (13.4), reconviction (6.5%), and reincarceration (4.1%) rates of all offenders.[8] The Sentencing Commission's study is consistent with earlier findings by the U.S. Department of Justice.[9] The combination of treatment plus the tendency to "age out" of criminality strongly suggests that a 390-month sentence will be sufficient to specifically deter Mr. Beatty, and the prospect of 30+ years in federal prison cannot credibly be said to threaten general deterrence.

---

[7] *See* U.S. SENT'G COMM'N, "The Effects of Aging on Recidivism Among Federal Offenders" (Dec. 2017) at 29, Fig. 13, 14, and 15, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last viewed on March 29, 2021).

[8] Even if Mr. Beatty is released before he reaches age 65, the recidivism percentages of offenders between 60 and 64 years old are also very low: rearrest (18.9%), reconviction (11.4%), and reincarceration (8.8%). *See* U.S. SENT'G COMM'N, "The Effects of Aging on Recidivism Among Federal Offenders," *supra* n.2 at 29, Fig. 13, 14, and 15.

[9] *See, e.g.,* U.S. DEP'T OF JUSTICE, Office of Justice Programs, "National Institute of Justice: Five Things About Deterrence" (May 2016), available at https://www.ojp.gov/pdffiles1/nij/247350.pdf (last viewed on Mar. 29, 2021) ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age.")

c. <u>The needs to consider the guideline range, 18 U.S.C. § 3553(a)(4)(A); afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B); and avoid unwarranted sentence disparities among defendants with similar records who were guilty of similar conduct, 18 U.S.C. § 3553(a)(6).</u>

Mr. Beatty's requested sentence will avoid an unwarranted sentencing disparity. This Honorable Court has, appropriately, not hesitated to sentence defendants in production and enticement cases to custodial terms in excess of either party's recommendation here when the totality of the circumstances so warrant. This is not such a case, and a 50-year sentence here would be "greater than necessary," 18 U.S.C. § 3553(a), and cause an unwarranted sentencing disparity, particularly in comparison to other production/enticement cases.[10]

One illustrative example is the 365-month sentence this Court imposed, on the government's recommendation, in *United States v. Kirkham*, 7:16-cr-00229-LSC-HNJ. There, the defendant was a former school teacher, principal, and administrator who abused his power to engage in sex acts with students—including paying at least one of them for sex[11]—and amassed a significant collection of child pornography. That defendant's collection of unadulterated filth included a video that one of his teenaged victims, under Kirkham's direction, made of the teen sodomizing his eight-year-old brother and a four-year-old.[12] One of Kirkham's minor victims submitted a Victim

---

[10] Upward variances in such cases are relatively rare. According to the U.S. Sentencing Commission, just 3.1% of offenders convicted of sexual abuse received upward variances in fiscal year 2019. *See* U.S. SENT'G COMM'N, *Quick Facts on Sexual Abuse Offenders* (May 2020) at 2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Sexual_Abuse_FY19.pdf (last viewed on May 20, 2021). 45% of such offenders received downward variances, 39.1% were sentenced within the guideline range, and 11.5% received a downward departure under the guidelines. *See id*.

[11] *See* Doc. 40 at 2, case no. 7:16-cr-00229-LSC-HNJ (government's Sentencing Memorandum).

[12] *See id*. at 2-3.

Impact Statement that set forth the ruinous effect that Kirkham's crime had inflicted on the victim.[13] The prosecuting Assistant United States Attorney called Kirkham's case the "most heinous" enticement case he had ever seen,[14] labeling that defendant's conduct "absolutely reprehensible, even by the standards of enticement cases."[15] This Court did not vary upward, and instead imposed the high-end, 365-month sentence.[16]

    d.  <u>The need to reflect the seriousness of the offense, promote respect for the law, and justly punish Mr. Beatty, while also accounting for his history and characteristics, 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).</u>

A 390-month prison sentence soundly reflects the seriousness of Mr. Beatty's offense, promotes respect for the law, and justly punishes him.

The question of punishment warrants special consideration. It is absolutely true that the government's request for a 600-month sentence metes out more punishment that Mr. Beatty's requested 390-month sentence. Of course, the justness of punishment is not automatically enhanced by a longer sentence. Mr. Beatty alone is responsible for his crimes, and he will lose decades of his life to a prison cell for it. But Mr. Beatty is not responsible for everything that happened to him up to that point, and this is a key distinction that counsels strongly against the 50-year sentence the government would have this Court impose.

A defendant who committed the same conduct despite having enjoyed every advantage in life, including but not limited to a loving and supportive family, is far

---

[13] *See* Doc. 53 at 19-22, case no. 7:16-cr-00229-LSC-HNJ (Sentencing Hearing Transcript).

[14] *See id*. at 17.

[15] *See id*. at 18.

[16] *See id*. at 26.

more deserving of a 50-year-sentence than for someone whose parents neglected and abused him, whose formative sexual experiences were his mother's showing him pornography and sexually abusing him over a multi-year period, and whose numerous co-occurring mental illnesses have now been identified for the first time, and can be treated. None of these facts make Mr. Beatty any less responsible for what he has done, but they are highly relevant in this Court's consideration of all of the statutory sentencing factors. In balancing all of the facts in Mr. Beatty's case, from the unspeakable to the mitigating, it is clear that a 390-month sentence fits not just the crime, but the criminal.

**V.    Conclusion: 390 months in prison is sufficient punishment.**

Mr. Beatty, with sincere remorse for his crimes, respectfully asks this Honorable Court to sentence him to 390 months in prison, with recommendations to the Bureau of Prisons for individualized mental health treatment as set forth in Dr. Parrott's evaluation, and placement into the Sex Offender Management Program. He further requests corresponding special conditions be included among the terms of his supervised release.

Respectfully submitted,

KEVIN L. BUTLER
Federal Public Defender
Northern District of Alabama

**/s/ James T. Gibson**
JAMES T. GIBSON
Assistant Federal Public Defender
505 20th Street North, Suite 1425
Birmingham, Alabama 35203
(205) 208-7170

12

james_gibson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, I electronically filed the foregoing via this Court's CM/ECF system, which will send notice of such filing to all counsel of record.

Respectfully submitted.

**/s/ James T. Gibson**
JAMES T. GIBSON
Assistant Federal Public Defender

13