```
 1              UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
 2                 NORTHEASTERN DIVISION

 3  UNITED STATES OF AMERICA,        5:19-CR-482-LSC-HNJ

 4          V.                       MAY 26, 2021

 5  JUSTIN DAVID BEATTY,             BIRMINGHAM, ALABAMA

 6          DEFENDANT.

 7  * * * * * * * * * * * *

 8              TRANSCRIPT OF SENTENCING
         BEFORE THE HONORABLE L. SCOTT COOGLER,
 9             UNITED STATES DISTRICT JUDGE
    APPEARANCES:
10
    FOR THE UNITED STATES:
11
    ROBIN LEANN WHITE, ESQ.
12
    ASSISTANT UNITED STATES ATTORNEY
13
    HUNTSVILLE, ALABAMA
14

15
    FOR THE DEFENDANT:
16
    JAMES T. GIBSON, ESQ.
17
    ASSISTANT FEDERAL PUBLIC DEFENDER
18
    BIRMINGHAM, ALABAMA
19

20
    COURT REPORTER:
21
    LINDY M. FULLER, RMR, CRR, CRC
22
    FEDERAL OFFICIAL COURT REPORTER
23
    BIRMINGHAM, ALABAMA
24

25
```

```
 1                P R O C E E D I N G S
 2                   (IN OPEN COURT)
 3                THE COURT:  ALL RIGHT.  THIS IS UNITED
 4   STATES OF AMERICA V. JUSTIN DAVID BEATTY,
 5   B-E-A-T-T-Y, CASE NUMBER 19-482.  WE ARE HERE FOR
 6   THE PURPOSE OF SENTENCING THE DEFENDANT.
 7                IS THE GOVERNMENT READY TO PROCEED?
 8                MS. WHITE:  YES, YOUR HONOR.
 9                THE COURT:  DEFENSE, YOU READY TO
10   PROCEED?
11                MR. GIBSON:  YES.  THANK YOU, YOUR
12   HONOR.
13                THE COURT:  HAVE YOU AND YOUR CLIENT
14   HAD AT LEAST 35 DAYS REVIEW THE PRESENTENCE
15   REPORT?
16                MR. GIBSON:  YOUR HONOR, WE HAVE.
17                THE COURT:  DO YOU HAVE ANY OBJECTIONS
18   TO IT?
19                MR. GIBSON:  YOUR HONOR, MY CLIENT AND
20   I DO NOT HAVE OBJECTIONS TO THE PSR.  THERE IS,
21   SEPARATELY FILED ON THE RECORDED, ATTACHED TO MY
22   SENTENCING MEMORANDUM IS A VERY EXHAUSTIVE MENTAL
23   HEALTH REPORT THAT I THINK WOULD BE OF BENEFIT TO
24   THE BUREAU OF PRISONS IN TREATING MR. BEATTY.
25   AND I WOULD LIKE TO ASK THAT BE MADE PART OF THE
```

1   RECORD, AND I CAN GET THAT TO THE PROBATION

2   OFFICE SEPARATELY TO SEND TO THE B.O.P. IF THAT

3   WOULD BE AGREEABLE.

4            THE COURT:  IT WOULD BE.

5            MR. GIBSON:  OKAY.  THANK YOU, YOUR

6   HONOR.

7            THE COURT:  GOVERNMENT, DO YOU HAVE ANY

8   OBJECTION TO THE PRESENTENCE REPORT?

9            MS. WHITE:  NO, YOUR HONOR.

10            THE COURT:  THERE BEING NO OBJECTIONS,

11   THE COURT ADOPTS THE FACTUAL STATEMENTS CONTAINED

12   IN THE PRESENTENCE REPORT AND MAKES SPECIFIC

13   FINDINGS THAT THE GUIDELINES OFFENSE LEVEL IS 40;

14   THE CRIMINAL HISTORY CATEGORY IS II; THE ADVISORY

15   GUIDELINE IMPRISONMENT RANGE IS 324 MONTHS TO 405

16   MONTHS.  FURTHER, THE SUPERVISED RELEASE PERIOD

17   IS FIVE YEARS TO LIFE, AND THE FINE RANGE IS

18   $50,000 TO $250,000.  RESTITUTION IS AN ISSUE IN

19   THE CASE.

20            DO WE NEED TO DEAL WITH RESTITUTION AT

21   THIS TIME OR IS THERE GOING TO BE A MOTION?

22            MS. WHITE:  YOUR HONOR, THERE HAS BEEN

23   NO REQUEST FOR RESTITUTION AT THIS TIME.  I WOULD

24   JUST ASK FOR IT TO REMAIN OPEN FOR 90 DAYS JUST

25   IN CASE --

```
 1                    THE COURT:  OKAY.

 2                    MS. WHITE:  -- I DO RECEIVE ANY

 3      REQUESTS.

 4                    THE COURT:  ALL RIGHT.  AND HAVE THE

 5      VICTIMS BEEN NOTIFIED OF THIS HEARING SO THEY

 6      COULD APPEAR IF THEY CHOSE?

 7                    MS. WHITE:  YES, YOUR HONOR, THEY HAVE

 8      BEEN.

 9                    THE COURT:  DID THEY SUBMIT ANY LETTERS

10      OR ANYTHING?

11                    MS. WHITE:  NO, SIR, THEY DID NOT.

12                    THE COURT:  OKAY.  ALL RIGHT.  THE

13      GOVERNMENT HAS FILED A MOTION FOR A VARIANCE TO

14      GO UP TO -- I AM NOT CHANGING THE GUIDELINE

15      RANGE, BUT A VARIANCE TO GO TO 50 YEARS IN PRISON

16      TOTAL.  WOULD THE GOVERNMENT LIKE TO BE HEARD ON

17      THAT MOTION BEFORE WE GET TO THE DEFENSE'S

18      STATEMENT?

19                    MS. WHITE:  I CAN, YOUR HONOR, OR I CAN

20      ADDRESS IT AFTER THE DEFENDANT'S STATEMENT AND

21      ADDRESS EVERYTHING AT THE SAME TIME.  HOWEVER --

22                    THE COURT:  GO AHEAD AND TAKE A RUN AT

23      THE MOTION NOW.

24                    MS. WHITE:  OKAY.  THANK YOU, YOUR

25      HONOR.
```

1          YOUR HONOR, AS I STATED EARLIER, THE

2     PSR CORRECTLY CALCULATES THE DEFENDANT'S ADVISORY

3     GUIDELINE RANGE.  HOWEVER, THIS RANGE DOES NOT

4     REFLECT THE SENTENCE IS APPROPRIATE WHEN

5     CONSIDERING THE 3553(A) FACTORS IN THIS CASE.  IN

6     LOOKING AT BEATTY'S HISTORY AND HIS

7     CHARACTERISTICS, IT SHOWS HIM TO BE A SERIAL

8     PREDATOR.

9          IN THE PLEA AGREEMENT, BEATTY ADMITTED

10    NOT ONLY TO CONDUCT THAT INVOLVED TWO VICTIMS

11    THAT HE PLED GUILTY TO BUT ALSO CONDUCT INVOLVING

12    MULTIPLE OTHER VICTIMS.  AND WE BELIEVE THAT THE

13    COURT SHOULD TAKE ALL OF THIS CONDUCT INTO

14    CONSIDERATION IN FASHIONING AN APPROPRIATE

15    SENTENCE IN THIS CASE.

16          YOUR HONOR, THIS DEFENDANT MANIPULATED

17    YOUNG GIRLS AGES 12 TO 17 YEARS OLD AND MADE THEM

18    DO ACTS TO THEMSELVES FOR HIS SEXUAL PLEASURE.

19    WHEN THEY REFUSED HIS DEMANDS, THEN HE WOULD

20    THREATEN THEM.  AND HE WOULD THREATEN THEM

21    THROUGH HUMILIATION AND SHAME, BY TELLING THEM

22    THAT HE WAS GOING TO POST THEIR PORNOGRAPHIC

23    PHOTOS ALL OVER FACEBOOK AND FOR THE WORLD TO

24    SEE.

25          AND HE ALSO MADE SOME OF THE MINORS,

1    SOME OF THE MINOR VICTIMS, DO SEXUAL ACTS.  AND

2    ALTHOUGH THE COUNTS OF CONVICTIONS DO NOT INCLUDE

3    THE COMMISSION OF THOSE SEXUAL ACTS WHICH WOULD

4    HAVE INCREASED THE GUIDELINE CALCULATION LEVEL BY

5    TWO POINTS UP TO THE 42, BEATTY DID STIPULATE TO

6    HAVING ENGAGED IN THIS CONDUCT WITH SOME OF THE

7    MINOR VICTIMS.

8            AND WE BELIEVE THAT HE SHOULD BE

9    PUNISHED NOT ONLY FOR THE OFFENSES HE PLED GUILTY

10   TO BUT ALL ATTENDANT RELEVANT CONDUCT THAT HE

11   STIPULATED TO AS WELL.

12           YOUR HONOR, I DON'T HAVE TO TELL YOU

13   THAT THESE ARE SERIOUS OFFENSES THAT THIS

14   DEFENDANT HAS COMMITTED AND HAS PLED GUILTY TO.

15   HE PERPETRATED THESE OFFENSES IN A VERY ORGANIZED

16   AND THOUGHT-OUT MANNER.  HE TARGETED,

17   SPECIFICALLY TARGETED PRETEENS AND TEENAGE GIRLS

18   AND THEN USED FALSE PERSONAS AND THREATS TO MAKE

19   THEM DO WHAT HE WANTED THEM TO DO FOR HIS OWN

20   SEXUAL DESIRES.

21           IN HIS INTERVIEW WITH THE AGENTS, HE

22   EVEN ADMITTED EXACTLY HOW HIS PLAN WAS CONDUCTED,

23   HOW HE WOULD ACT LIKE HE WAS THIS OTHER PERSON,

24   NAME OF LEXI, TO CONTACT YOUNG GIRLS.  AND THAT

25   HE CONTACTED ONE OR TWO DOZEN GIRLS FOR A BRA

1   PHOTO.  AND THEN ONCE HE GOT THE GIRLS TO SEND

2   HIM A BRA PHOTO, THEN HE ASKED FOR MORE PHOTOS OF

3   THEM EXPOSING THEMSELVES.  AND IF THEY REFUSED,

4   HE ADMITTED HE WOULD THREATEN THEM.  THAT WAS

5   WHAT HE WOULD DO.

6            HE SELECTED THESE YOUNG VICTIMS SO HE

7   COULD MANIPULATE THEM AND CONTROL THEM.  AND HE

8   USED HIS SKILL AT THE COMPUTER IN ORDER TO

9   EXPLOIT THEM.  HE DESTROYED THEIR TRUST, STOLE

10  THEIR INNOCENCE, AND DEVASTATED THEIR CHILDHOOD.

11           AND YOUR HONOR, HE COMMITTED MANY OF

12  THESE CRIMES, INCLUDING ALL OF THE COUNTS THAT HE

13  PLED GUILTY TO IN THIS CASE, AFTER HE WAS

14  ARRESTED ON CHILD PORNOGRAPHY CHARGES IN 2012 AND

15  ATTENDED A PRETRIAL DIVERSION PROGRAM WHICH HE

16  DID NOT COMPLETE.

17           THE COURT:  WHAT COURT HAD HIM CHARGED

18  WITH CHILD PORNOGRAPHY AND ALLOWED HIM TO GO

19  THROUGH A PRETRIAL DIVERSION?

20           MS. WHITE:  IT WAS MADISON COUNTY, YOUR

21  HONOR.

22           THE COURT:  WHY DID THE U.S.

23  GOVERNMENT NOT PICK UP THE CHILD PORNOGRAPHY CASE

24  AGAINST HIM BACK THEN?

25           MS. WHITE:  YOUR HONOR, I CAN'T ANSWER

1    THAT QUESTION, BEING THAT I HAVE BEEN WITH THE

2    GOVERNMENT AND BEEN IN MY POSITION FOR TWO YEARS,

3    SO THAT WAS PRIOR TO MY TIME.  I CAN ONLY MAKE

4    SPECULATION ON THAT, YOUR HONOR, IN THAT WE

5    WEREN'T MADE AWARE OF IT.  I DO NOT KNOW THE

6    ANSWER TO THAT, YOUR HONOR.

7              THE COURT:  I WAS JUST CURIOUS BECAUSE

8    THERE WAS A LARGE AMOUNT OF TIME ABOUT THEN THAT

9    I DON'T THINK WE HAD -- I DON'T THINK -- I DIDN'T

10   HAVE A SINGLE CHILD PORNOGRAPHY CHARGE COME

11   THROUGH MY COURT.  I WAS JUST CURIOUS WHY THE

12   GOVERNMENT CHOSE NOT TO PROSECUTE CHILD

13   PORNOGRAPHY CASES THEN.

14             MS. WHITE:  AND, YOUR HONOR, AGAIN, I

15   WAS NOT --

16             THE COURT:  OKAY.  WELL, LET'S TURN TO

17   THE DEFENSE.  HOW DO YOU WANT TO HANDLE THIS,

18   JAMIE?  I CAN ASK YOUR CLIENT AND THEN I CAN TURN

19   TO YOU FOR ARGUMENTS ABOUT THAT.  BECAUSE, YOU

20   KNOW, UNLESS YOU THINK YOUR CLIENT IS GOING TO

21   ADD SOMETHING THAT WOULD BE IN RESPONSE FURTHER

22   AFTER YOU TALK.  SO, DO YOU WANT TO GO FIRST OR

23   DO YOU WANT YOUR CLIENT TO GO FIRST?

24             MR. GIBSON:  YOUR HONOR, I CAN PROCEED

25   SIMPLY BECAUSE -- AND I WILL GET INTO THIS MORE

```
 1    LATER -- BUT SOME OF MR. BEATTY'S MENTAL

 2    ILLNESSES, AMONG THEM IS SOCIAL ANXIETY DISORDER.

 3    I DON'T KNOW THAT HE IS ABLE TO SPEAK THIS

 4    MORNING.

 5              THE COURT:  SOCIAL ANXIETY?

 6              MR. GIBSON:  YES, SIR, THAT'S ONE OF

 7    THEM.  NOT THE PREMIUM ONE BUT ONE OF THEM.

 8    SO HE HAS ASKED ME TO SPEAK FOR HIM SO I CAN

 9    INCORPORATE HIS SENTIMENTS --

10              THE COURT:  HE NEEDS TO KNOW I STILL

11    HAVE TO ASK HIM.

12              MR. GIBSON: I UNDERSTAND.

13              THE COURT:  WHY DON'T I JUST GO AHEAD

14    AND ASK HIM?

15              MR. GIBSON:  PLEASE.

16              THE COURT:  ANYTHING YOU WANT TO TELL

17    ME IN MITIGATION OR OTHERWISE?

18              THE DEFENDANT:  NO, YOUR HONOR.

19              THE COURT:  ALL RIGHT.  JAMIE.

20              MR. GIBSON:  THANK YOU, YOUR HONOR.  DO

21    YOU WANT ME TO ADDRESS THE UPWARD VARIANCE

22    REQUEST --

23              THE COURT:  I WANT YOU TO ADDRESS

24    EVERYTHING, YEAH, BECAUSE THE UPWARD VARIANCE IS

25    JUST PART OF THE DECISION MAKING I HAVE TO MAKE
```

1    BECAUSE I HAVE TO DECIDE WHAT IS APPROPRIATE AND

2    A REASONABLE SENTENCE WHEN I CONSIDER THE NATURE

3    AND CIRCUMSTANCES OF THE OFFENSE, HISTORY AND

4    CHARACTERISTICS OF THE DEFENDANT, AND ALL THE

5    OTHER SENTENCING FACTORS IN THE UNITED STATES

6    CODE.

7            SO, ANYTHING YOU FEEL LIKE YOU NEED TO

8    ADDRESS --

9            MR. GIBSON:  THANK YOU, YOUR HONOR.

10           THE COURT:  -- THIS WOULD BE THE TIME.

11           MR. GIBSON:  THANK YOU, YOUR HONOR.

12   AND TO PICK UP ON THAT, JUDGE, I DO UNDERSTAND

13   THAT IT IS YOUR RESPONSIBILITY, YOUR DUTY, TO

14   IMPOSE A REASONABLE SENTENCE.

15           I HAVE PROPOSED WHAT, WITH A LOT OF

16   DELIBERATION, WHAT I BELIEVE IS A REASONABLE

17   SENTENCE.  I REQUESTED 390 MONTHS, YOUR HONOR.

18   THAT'S NOT A DOWNWARD VARIANCE.  THAT'S NOT EVEN

19   THE LOW END.  THAT IS PRETTY CLOSE TO THE HIGH

20   END AMONG THIS 324 TO 405 MONTH GUIDELINE RANGE.

21   YOU HAVE AN 81 MONTH SPAN TO WORK WITH IN THIS,

22   YOUR HONOR, WITHIN THE GUIDELINE RANGE.  NOT TO

23   SAY YOU CAN'T VARY UP; I AM NOT SAYING THAT.  BUT

24   WITHIN THE GUIDELINE RANGE THERE IS AMPLE

25   OPPORTUNITY FOR YOU TO CONSIDER THE AGGRAVATING

1  FACTORS IN THIS CASE BUT ALSO THE MITIGATING

2  FACTORS IN THIS CASE.  AND I WANT TO ADDRESS SOME

3  OF THOSE NOW, IF I MAY.

4          THE COURT:  YES.

5          MR. GIBSON:  YOUR HONOR, MR. BEATTY,

6  BECAUSE OF THE RANDOMNESS OF THE CORONA VIRUS

7  PANDEMIC AND SOME OTHER MATTERS, I HAVE BEEN

8  WORKING WITH HIM FOR NOT QUITE TWO YEARS NOW BUT

9  PRETTY CLOSE TO IT.  AND I HAVE LEARNED HE IS

10  MANY THINGS, JUDGE.  HE IS A CRIMINAL, OBVIOUSLY;

11  HE IS AN ABUSER.  I DON'T DISAGREE WITH WHAT THE

12  GOVERNMENT SAYS IN THAT RESPECT.  BUT, JUDGE, I

13  THINK IT WAS WRITTEN ONCE THAT PEOPLE CONTAIN

14  MULTITUDES.  HE IS NOT JUST A CRIMINAL OR AN

15  ABUSER.  HE IS ALSO A VICTIM, YOUR HONOR.  HE IS

16  EVERY BIT A VICTIM AS ANY OTHER VICTIM OF CHILD

17  ABUSE AND SEXUAL CHILD ABUSE.  AND IT IS NOT

18  UNCOMMON, I KNOW, SIR, FROM WHERE YOU ARE

19  SITTING, TO SEE DEFENDANTS CHARGED WITH THESE

20  KINDS OF CRIMES COME IN AND TALK ABOUT SOME

21  TERRIBLE THINGS THAT HAPPENED TO THEM AS A CHILD.

22  YOU MIGHT SEE A VAGUE LINE OR TWO IN A

23  PRESENTENCE REPORT SOMETIMES.

24          THAT'S NOT WHAT WE HAVE HERE, YOUR

25  HONOR.  AND THE REASON THAT'S NOT WHAT WE HAVE

1    HERE IS THAT WE HAVE THIS PSYCHOLOGICAL

2    EVALUATION FROM DR. CAROLINE PARROTT, WHO I HAVE

3    ASKED TO BE HERE THIS MORNING.  SHE IS FROM

4    TUSCALOOSA; SHE IS SITTING HERE IN THE BACK.  I

5    DON'T INTEND TO PUT ON TESTIMONY JUST OUT OF

6    RESPECT FOR THE COURT'S TIME AND SCHEDULE, BUT I

7    DID WANT HER HERE IN CASE THE COURT HAD QUESTIONS

8    BASED ON THE REPORT, WHICH I KNOW IS EXHAUSTIVE.

9    BUT IT'S EXHAUSTIVE FOR A REASON BECAUSE,

10   FRANKLY, MR. BEATTY HAS NUMEROUS CO-RECURRING

11   MENTAL ILLNESSES THAT HAVE NOT ONLY BEEN

12   UNTREATED UP TILL NOW; THEY HAVEN'T BEEN

13   DIAGNOSED UP TILL NOW.  AND THEY ARE DIAGNOSED

14   ONLY BECAUSE I ASKED DR. PARROTT.

15         WE RETAINED DR. PARROTT -- NOT AS A

16   DEFENSE MITIGATION EXPERT.  I DIDN'T ASK HER TO

17   FIND ME SOMETHING TO ARGUE TO YOU, YOUR HONOR.  I

18   ASKED HER, "TELL ME WHAT'S WRONG WITH THIS MAN.

19   HELP ME FIGURE OUT WHAT, IF ANYTHING, IS WRONG

20   WITH THIS MAN."  AND I WAS FULLY PREPARED FOR HER

21   TO, THE ANSWER NOT TO BE TO OUR BENEFIT IN COURT

22   TODAY.  BECAUSE SOME PEOPLE ARE TRULY REDEEMABLE,

23   AND I REALIZE THAT.  BUT THAT'S NOT WHAT DR.

24   PARROTT FOUND.  SHE HAS FOUND -- I KNOW THIS IS

25   IN THE RECORD AND THE COURT'S REVIEWED IT ALONG

1    WITH MY SUMMARY IN THE SENTENCING MEMORANDUM, BUT

2    THERE ARE NUMEROUS MENTAL ILLNESSES, INCLUDING

3    POST TRAUMATIC STRESS DISORDER; THE SOCIAL

4    ANXIETY DISORDER I REFERENCED EARLIER; IMPULSE

5    CONTROL DISORDER, WHICH IS IMPORTANT BECAUSE IN

6    HIS CASE IT MANIFESTS WITH A HYPERSEXUAL CONTENT.

7              FURTHERMORE, MR. BEATTY SUFFERS FROM

8    AVOIDANT PERSONALITY DISORDER AND INTERNET GAMING

9    DISORDER, WHICH SOUNDS MADE UP TO ME BUT ACTUALLY

10   IS A CLINICAL CONDITION.  AND MR. BEATTY IS

11   CLASSIFIED AS SEVERE BY DR. PARROTT.

12             NOW, I WILL GET INTO THAT MORE IN A

13   MOMENT IF THE COURT WILL ALLOW THAT.  BUT I WANT

14   TO PAUSE HERE AND TELL YOU WHAT ELSE -- TO

15   HIGHLIGHT WHAT ELSE DR. PARROTT FOUND.  JUST A

16   HORRIFIC ACCOUNT OF AN UPBRINGING BY TWO PARENTS

17   WHO, FRANKLY, DIDN'T WANT TO BE PARENTS BY ALL

18   ACCOUNTS, YOUR HONOR.

19             MR. BEATTY, AS A CHILD -- JUSTIN, AS A

20   CHILD, WAS HOUSED ON THE OTHER SIDE OF THE HOME

21   FROM HIS PARENTS.  THEY PUT HIM IN FRONT OF A

22   SCREEN.  AS A PARENT OF YOUNG CHILDREN WHO

23   APPLIES SCREEN TIME WITH AN IRON FIST, I FIND

24   THAT NOTABLE.  BUT WITH HIM, IT WAS THE NEWEST

25   GAME SYSTEM GAMES, "HERE, JUSTIN, GO WATCH VIDEO

1    GAMES, GO PLAY VIDEO GAMES, GO WATCH TELEVISION".

2    BUT MOST OF HIS INTERACTION WITH HIS PARENTS WAS

3    NOT INTERACTION AT ALL.  BUT WHAT INTERACTION HE

4    DID HAVE WAS NEGATIVE.

5            THE COURT HAS READ OF HIS FATHER'S

6    MENTAL ILLNESS IN THE SENTENCING MEMO AND

7    WHILE -- AND THE DOMESTIC VIOLENCE THAT HE

8    WITNESSED PERPETUATED ON HIS MOM.  JUSTIN HIMSELF

9    WAS, I THINK, IN HIS WORDS, SLAPPED AROUND.  HIS

10   FATHER WOULD CALL HIM EXPLETIVES, CALLED HIM

11   WORTHLESS.  AND THAT'S THE BETTER PARENT, JUDGE,

12   BECAUSE HIS MOTHER, WHO WAS HERSELF, BY ALL

13   ACCOUNTS, OR PURPORTEDLY A SURVIVOR  OF CHILD

14   SEXUAL ABUSE, WAS HER SON'S FIRST AND I BELIEVE

15   ONLY SEXUAL PARTNER.  AS YOUNG AS NINE YEARS OLD,

16   YOUR HONOR, THIS WOMAN, OVER A FOUR YEAR PERIOD,

17   SEXUALLY ABUSED HIM.  SHE ALSO INTRODUCED HIM TO

18   INTERNET PORNOGRAPHY, WHICH I THINK I WROTE IN MY

19   PLEADING IS AN UNFORTUNATE MILESTONE IN HIS LIFE

20   BECAUSE OF THE FLOOD GATES IT HELPED LEAD TO.

21            JUDGE, THE CREDIBILITY OF SOMEONE

22   FACING THIS MANY YEARS IN PRISON CAN BE DOUBTED,

23   I REALIZE THAT.  BUT DR. PARROTT IS CLINICALLY

24   TRAINED TO ASSESS THOSE SORTS OF QUESTIONS.  IN

25   HER REPORT, SHE FINDS MR. BEATTY CREDIBLE.  HE

1    DID NOT VOLUNTEER THIS.  HE DIDN'T SAY, "WELL, I

2    WAS ABUSED AND RAPED AS A CHILD, PLEASE GIVE ME A

3    BREAK".  SHE HAD TO PULL IT OUT OF HIM USING HER

4    CLINICALLY-TRAINED TECHNIQUES TO GET HIM TO

5    DISCLOSE THAT FOR THE FIRST TIME TO ANY OTHER

6    LIVING HUMAN BEING.

7            NOW, AGAIN, NOT WHOLLY UNHEARD OF IN

8    THESE CASES, BUT THERE IS A SENSE IN WHICH

9    MR. BEATTY'S SITUATION IS WORSE THAN, I HATE TO

10   SAY, THE AVERAGE FORMER VICTIM WHO GROWS UP TO

11   BECOME, CONTINUES THE PATTERN INTO ADULTHOOD BUT

12   HE IS DIFFERENT BECAUSE HE DIDN'T HAVE ANY OTHER

13   SUPPORT SYSTEM TO SPEAK OF.  SOMEONE WHO IS

14   ABUSED AS A CHILD, AS AWFUL AS THAT MAY BE, OFTEN

15   THEY HAVE -- EVEN IF BY A PARENT, OFTEN THERE IS

16   ANOTHER PARENT WHO WAS INVOLVED.  THERE IS A

17   PASTOR, THERE IS A FAVORITE TEACHER OF SORTS.

18   MR. BEATTY HAD NONE OF THIS -- NONE.  AND SO HIS

19   ONLY COPING MECHANISMS THAT HE LEARNED WERE BAD

20   ONES.  THE CLINICAL TERM DR. PARROTT USES IS

21   MALADAPTIVE.  BUT THE WAY HE ADAPTS IS ACTING OUT

22   SEXUALLY, PLAYING VIDEO GAMES, AND AVOIDING

23   WITHIN HIMSELF TO AVOID ANY KIND OF SOCIAL

24   SITUATION OR JUDGMENT OR INTERACTION WITH OTHER

25   HUMAN BEINGS.

1      AND DISCUSSING WITH DR. PARROTT, THIS
2   IS NOT A HANDS-ON SEX OFFENSE, AND I SAY THAT NOT
3   TO DENIGRATE THE SERIOUSNESS OR THE DEPRAVITY OF
4   IT, BUT IT'S A FACT IT'S NOT A HANDS-ON SEX
5   OFFENSE BECAUSE HE DIDN'T PERSONALLY INTERACT
6   WITH THE VICTIMS.  BUT --
7           THE COURT:  JAMIE.
8           MR. GIBSON:  SIR?
9           THE COURT:  I DON'T AGREE WITH YOU ON
10  THAT; I JUST WANT YOU TO UNDERSTAND THAT.  WHEN
11  YOU DIRECT A CHILD TO ABUSE THE CHILD'S SELF,
12  THAT IS HANDS ON; WHETHER YOU ARE DOING IT ACROSS
13  THE WORLD OR IN THE SAME ROOM.
14          MR. GIBSON:  WELL, I DON'T -
15          THE COURT:  IN MY OPINION.
16          MR. GIBSON:  AND, YOUR HONOR, I DON'T
17  DISAGREE WITH THE WAY YOU PUT THAT RIGHT THERE.
18  I AM SIMPLY MAKING THE POINT THIS ISN'T A CASE
19  THE COURT'S SEEN BEFORE WHERE SOMEONE'S RAPING
20  SOMEONE AND VIDEOTAPING IT, FOR EXAMPLE.  NOT
21  SAYING ANY ONE IS GOOD; I AM NOT TRYING TO
22  DENIGRATE THAT.  I KNOW THE COURT HAS TO --
23          THE COURT:  I THINK IT'S JUST AS BAD.
24          MR. GIBSON:  OKAY.  I UNDERSTAND.
25          THE COURT:  AS A MATTER OF FACT, IT

1  COULD BE WORSE.  WHEN YOU MAKE A CHILD DO THAT TO

2  THE CHILD'S SELF, THAT OBVIOUSLY, TO ME, IS WORSE

3  THAN YOU DOING IT TO THE CHILD BECAUSE THEN THE

4  CHILD ALSO HAS THE ADDITIONAL PSYCHOLOGICAL

5  ISSUES DEALING WITH THEM DOING IT TO THEMSELVES

6  RATHER THAN HAVING TO BLAME JUST ONE PERSON.

7          SO, I MEAN, YOU ARE NOT GETTING

8  ANYWHERE ON THAT ARGUMENT, SO I WOULD MOVE TO

9  ANOTHER ONE IF I WERE YOU.

10          MR. GIBSON:  I UNDERSTAND THAT, YOUR

11  HONOR.  I APPRECIATE YOU REDIRECTING ME.

12          TO THAT POINT, THINGS THAT MR. BEATTY

13  WAS MADE TO DO AS A CHILD, I THINK, ARE HIGHLY

14  RELEVANT HERE.  AND TO MY KNOWLEDGE, THE PERSON

15  WHO DID THAT TO HIM HAS NEVER BEEN IN A JUMPSUIT

16  IN FRONT OF SOMEONE IN A BLACK ROBE.  AND TO MY

17  KNOWLEDGE, NO ONE HAS EVER --

18          THE COURT:  HAS HE REPORTED IT?  IS SHE

19  STILL ALIVE?  IS IT SOMETHING THAT COULD BE -- I

20  DON'T KNOW WHAT THE STATUTE OF LIMITATIONS IS ON

21  IT.

22          MR. GIBSON:  I HAVE NO KNOWLEDGE OF

23  THE STATUTE OF LIMITATIONS ON THAT, YOUR HONOR.

24          THE COURT:  HAS HE TRIED TO PROSECUTE

25  HER?  HAS ANYBODY TRIED TO PROSECUTE HER?

1          MR. GIBSON:  NO, SIR.  THIS IS THE

2    FIRST TIME HE HAS DISCLOSED IT IN FEBRUARY,

3    MARCH, AND APRIL OF THIS YEAR AS WE WERE

4    ASSESSING HIM.  WHICH IS NOT UNCOMMON, AS I'M

5    SURE THE COURT'S AWARE OF A TRAUMA VICTIM.

6          THE COURT:  I GUESS THERE IS NOT A

7    REPORTING REQUIREMENT TO A PSYCHIATRIST OR

8    PSYCHOLOGIST, I DON'T REMEMBER WHICH ONE IT IS,

9    BECAUSE HE IS NOT A MINOR ANY MORE.  ANYWAY.

10         GO AHEAD.

11         MR. GIBSON:  YES, SIR.  LET ME JUST

12   SAY I DON'T DISAGREE AT ALL WITH THE COURT ON

13   THAT.  IT IS BEYOND MY BRIEF, AS IT WERE.  BUT I

14   DON'T DISAGREE WITH YOU, SIR.

15         BUT I DO WANT TO MAKE, I DO WANT TO

16   EMPHASIZE THAT I DON'T BELIEVE THE FACT HE HASN'T

17   REPORTED SHOULD IMPUGN THE VERACITY OF WHAT HE IS

18   SAYING.  NOT FOR THAT REASON ANYWAY.

19         YOUR HONOR, WITH PARTICULAR RESPECT TO

20   THESE CONDITIONS, WHAT I THINK MAY BE THE MOST

21   SIGNIFICANT POINT I NEED TO MAKE IS THAT THEY ARE

22   TREATABLE.  THE COURT COMMONLY ORDERS COGNITIVE

23   BEHAVIORAL THERAPY AND ASSOCIATED TREATMENT FOR

24   DEFENDANTS IN THIS COURT.  SO, I DON'T WANT IT TO

25   BE -- I DON'T WANT IT TO BE, OH, JUST CBT WILL

1    FIX MR. BEATTY.  I DON'T MEAN TO MINIMIZE IT LIKE

2    THAT.  BUT COGNITIVE BEHAVIORAL THERAPY IS AN

3    EMPIRICAL, SOUND, PEER REVIEW, CLINICALLY-PROVEN

4    METHOD FOR PEOPLE WITH MR. BEATTY'S CO-RECURRING

5    MENTAL HEALTH CONDITIONS.

6              IN ADDITION TO THE COGNITIVE BEHAVIORAL

7    THERAPY, THERE IS A SUBSET OF IT THAT I DESCRIBED

8    IN MY MEMORANDUM; I BELIEVE IT IS SOCIAL SKILLS

9    TRAINING.  AND THAT IS ALSO A COMPONENT THAT CAN

10   HELP HIM WITH, TO GET AWAY FROM THE SELF

11   DESTRUCTIVE IMPULSIVENESS AND RISK-TAKING

12   BEHAVIOR.  AND ALSO GOING TO ADDRESS THE

13   AUTISTIC-LIKE COMMUNICATION SOCIAL DEFECTS THAT

14   HE HAS.

15             IT WAS OBVIOUS TO ME FROM HAVING MET

16   THE GENTLEMAN, WHICH IS WHY I TRIED -- FRANKLY,

17   JUDGE, I WAS GRASPING ALMOST AT STRAWS BECAUSE I

18   COULDN'T COMMUNICATE WITH HIM EFFECTIVELY IN A

19   WAY THAT I COULD TRY TO HELP MITIGATE HIS

20   SENTENCE.  I AM NOT SUGGESTING HE IS NOT

21   COMPETENT; HE IS COMPETENT.  BUT I THINK, I THINK

22   THE INTEGRITY OF THAT EVALUATION SHOULD BE NOTED,

23   YOUR HONOR, BECAUSE, AGAIN, DR. PARROTT WAS NOT

24   HIRED TO FIND MITIGATION.  SHE WAS HIRED TO HELP

25   ME TRY TO UNDERSTAND THIS MAN, THIS BROKEN HUMAN

1    BEING.

2              AND THAT BROKENNESS CAN BE HEALED

3    THROUGH THIS TREATMENT THAT'S DESCRIBED IN

4    LENGTH.  AND I CAN GET INTO THAT MORE IF THE

5    COURT WOULD LIKE --

6              THE COURT:  THAT WOULD BE SOMETHING

7    NEEDS TO GO TO THE BUREAU OF PRISONS.

8              THE COURT:  YES, SIR, I UNDERSTAND

9    THAT.

10             BUT TO THAT POINT, TO THAT END, YOUR

11   HONOR, THERE IS, IF NOT -- I'M NOT TRYING TO SAY

12   IT'S AS EASY AS SEEING THE DOCTOR, TAKE THIS PILL

13   AND YOU WILL BE FINE IN 30 DAYS.  BUT THERE IS A

14   COURSE OF TREATMENT THAT HE CAN GET IN PRISON

15   THAT WILL HELP HIM TO MANAGE AND OVERCOME SOME OF

16   THESE MENTAL ILLNESSES AND MAKE HIM LESS A

17   RECIDIVISM RISK.

18             VERY IMPORTANT TO NOTE, THIS PRETRIAL

19   DIVERSION INSTANCE THAT WAS REFERENCED EARLIER IS

20   NOT MY UNDERSTANDING THAT ANY SHRED OF MENTAL

21   HEALTH TREATMENT WAS PART OF THAT.

22             THE COURT:  OBVIOUSLY, THE SYSTEM,

23   STATE AND FEDERAL, BECAUSE THE U.S. ATTORNEY'S

24   OFFICE DIDN'T PICK THAT UP.

25             MR. GIBSON:  YES, SIR.

1            THE COURT:  I WOULD BE INTERESTED IN

2     KNOWING WHETHER IT WAS EVER REFERRED TO THEM,

3     FRANKLY.

4            MR. GIBSON:  YES.

5            THE COURT:  THEY FAILED -- THE STATE

6     AND FEDERAL SYSTEM FAILED NOT ONLY HIM BUT EVERY

7     ONE OF THESE CHILDREN THAT HE MOLESTED BY PROXY,

8     IF YOU WILL --

9            MR. GIBSON:  YES, SIR.

10            THE COURT:  -- AND THREATENED AND

11     EXPOSED AND VICTIMIZED.  ALL OF THOSE PEOPLE WERE

12     LET DOWN BY THE STATE AND FEDERAL SYSTEM WITHOUT

13     QUESTION, INCLUDING YOUR CLIENT.

14            MR. GIBSON:  YES, YOUR HONOR.

15            THE COURT:  BECAUSE BACK THEN, PERHAPS

16     WE COULD HAVE DEALT WITH THE SITUATION BACK THEN

17     IF IT HAD BEEN BROUGHT TO THE ATTENTION OF THE

18     COURTS.  IT WASN'T.  AT LEAST NOT THE FEDERAL

19     COURTS WAS THE STATEMENT.

20            MR. GIBSON:  YES, SIR.  I CAN'T AGREE

21     WITH YOU MORE JUDGE.  I ALSO WISH THAT SOME SORT

22     OF TREATMENT AND EVALUATION HAD BEEN PART OF THE

23     STATE SENTENCE IN 2015 BUT IT WASN'T.

24            HIS PARENTS, GOING FARTHER BACK,

25     OBVIOUSLY THEY WEREN'T GOING TO REFER HIM AND

 1    TAKE HIM FOR TREATMENT.  THE ONLY TREATMENT HE

 2    HAD, HE WAS MEDICATED HEAVILY AS A CHILD FOR

 3    ACTING OUT.  I AM NOT SURPRISED HE WAS ACTING

 4    OUT, GIVEN ALL HE WAS ENDURING.

 5              THE COURT:  PROBABLY A LOT TO DO WITH

 6    HIS ADHD, I WOULD GUESS.

 7              MR. GIBSON:  YES, SIR; EXACTLY.  BUT,

 8    YOUR HONOR, I REGRET THAT AS WELL BECAUSE NOW HE

 9    IS GOING TO DO DECADES IN PRISON, AND THAT'S A

10    FACT.  AND I AM NOT ASKING YOU TO CHANGE THAT

11    REALITY.  I AM ASKING YOU TO IMPOSE A

12    PROPORTIONATE SENTENCE FOR THE CRIME THAT DOESN'T

13    JUST CONSIDER THE HORRID CONDUCT THAT HE HAS DONE

14    THAT HE HAS TAKEN RESPONSIBILITY FOR BUT ALSO

15    CONSIDERS THE HUMAN BEING THAT HE IS AND WHAT HE

16    HAS GONE THROUGH.

17              WHAT HE DID TO THOSE YOUNG LADIES, TO

18    THOSE VICTIMS, IS HIS FAULT.  BUT WHAT HAPPENED

19    TO HIM IS NOT HIS FAULT.  AND I THINK THAT'S AN

20    IMPORTANT COMPONENT TO CONSIDER.

21              I WOULD LIKE TO ADDRESS IN MORE DETAIL

22    SOME OF THE SENTENCING ARGUMENTS.  YOUR HONOR, I

23    MENTIONED EARLIER THERE IS AN 81 MONTH SPAN FOR

24    PLAYING THE JOINTS, TO COIN A PHRASE, IN THE

25    GUIDELINE RANGE.  THE COURT CAN ACCOUNT FOR THE

```
1    AGGRAVATING FACTORS ABLY BY GOING TO THE SENTENCE
2    WE HAVE PROPOSED.  I HOPE I HAVE BUILT THE --
3    BUILT THE RECORD OF NOT ASKING FOR ABSURD OR
4    RIDICULOUS SENTENCES HERE, AND I DON'T THINK THIS
5    IS ONE.  I THINK THIS IS ONE THAT ACCOUNTS FOR
6    THE CRIME AND THE CRIMINAL.
7            I THINK THAT THE FACT THAT THE
8    GUIDELINES DO, IN FACT, ACCOUNT FOR HIS USE OF A
9    COMPUTER AND MISREPRESENTING HIS IDENTITY WHICH,
10   I THINK, COUNSEL REFERENCED EARLIER.  THE
11   GUIDELINES DO ACCOUNT FOR THAT.  THEY DO ACCOUNT
12   FOR THE AGE OF THE VICTIMS.  THE OFFENSE LEVEL
13   ITSELF ACCOUNTS FOR THE CHARGE, THE CHARGES OF
14   CONVICTION.  AND THE FIVE LEVEL CHAPTER FOUR
15   PATTERN ENHANCEMENT ACCOUNTS FOR NOT ONLY THE TWO
16   VICTIMS WHOSE PAIN UNDERGO THE COUNTS OF
17   CONVICTION BUT ALSO THE OTHER FOUR THAT WERE
18   DISMISSED UNDER THE PLEA AGREEMENT.
19           NOW, I KNOW THAT PATTERN ENHANCEMENT
20   APPLIES EITHER WAY.  IN FACT, YOU CAN GET PATTERN
21   ENHANCEMENT WITH ONE VICTIM.  BUT I AM MAKING THE
22   POINT THAT IT'S NOT THAT THE GUIDELINES DON'T
23   INCORPORATE A LOT OF THE AGGRAVATING FACTORS.
24   AND THAT'S WHY I ASSUME THAT THE SENTENCING
25   GUIDELINES DON'T KEY TO ONE, KEY TO A SPAN OF
```

```
1   MONTHS AS OPPOSED TO ONE SENTENCE.  SO THAT THE

2   COURT CAN SIT AND LOOK AT, WELL, YES, THERE IS

3   THIS AGGRAVATING FACTOR, MAYBE A HIGHER END

4   SENTENCE IS APPROPRIATE BUT TAKE THIS INTO

5   ACCOUNT.  MAYBE MIDDLE IS APPROPRIATE.

6           AGAIN, I AM NOT GOING TO EVEN ASK FOR

7   THE MIDDLE, JUDGE.  I AM ASKING FOR JUST SHORT OF

8   THE HIGH END FOR THESE REASONS.  I DON'T THINK

9   THAT AN UPWARD VARIANCE TO 600 MONTHS IS

10  APPROPRIATE HERE.  I KNOW THE COURT IS AWARE OF

11  THE -- THE COURT DOESN'T NEED RECYCLED LAW ABOUT

12  THE JUSTIFICATION FOR SUCH A SIGNIFICANT UPWARD

13  VARIANCE.  BUT I WILL SAY THIS:  THAT THE

14  GOVERNMENT WOULD ASK THAT THE COURT CONSIDER THIS

15  TO BE A 360 TO LIFE CASE AND I AM NOT FALLING IN

16  LINE WITH THAT.  BUT I AM SAYING, I WILL POINT

17  OUT EVEN IN THAT INSTANCE 390 MONTHS IS STILL A

18  SIGNIFICANT BUMP FROM THE LOW END OF EVEN THAT

19  GUIDELINE FOR THAT TO BE THE ONE THAT APPLIED.

20          THE COURT:  OKAY.  ALL RIGHT.  I DON'T

21  BELIEVE THIS IS A 390 MONTH SENTENCE CASE.  I

22  ACTUALLY THINK IT WOULD BE MORE THAN 50 YEARS,

23  BUT THE GOVERNMENT IS ONLY ASKING FOR 50 YEARS.

24  I AM GOING TO GIVE HIM THE 50 YEAR SENTENCE THAT

25  THE GOVERNMENT'S ASKING FOR.  MY INCLINICATION IS
```

1    TO GIVE HIM MORE THAN THAT, AND I DON'T THINK

2    THAT WILL SURPRISE ANYBODY IN THE ROOM.  IF IT

3    DOES, I AM SURPRISED, FRANKLY.

4         BUT I HAVE HEARD YOUR ARGUMENTS AND I

5    THINK IT'S A SHAME WHAT SOCIETY AND HIS MOTHER

6    AND FATHER DID TO HIM.  BUT I ALSO THINK IT'S

7    ABSOLUTELY HORRID WHAT HE DID TO OTHERS.  AND HE

8    HAD NO LICENSE TO DO THAT BECAUSE HE WAS ABUSED

9    AS A CHILD.  I THINK IT IS HORRID THAT THE STATE

10   FAILED HIM AND DID NOT PROSECUTE HIM SUFFICIENTLY

11   WHEN THEY HAD THE CHARGES IN 2012.  I THINK IT'S

12   HORRID TO THE VICTIMS IN THIS CASE THAT THE STATE

13   DIDN'T DO THAT.  I THINK IT'S HORRID THAT THE

14   UNITED STATES GOVERNMENT DIDN'T TAKE THE CASE AND

15   PROSECUTE HIM IF THE STATE WASN'T GOING TO BACK

16   IN 2012.  BUT I CAN'T FIX -- I WISH I HAD A TIME

17   MACHINE.  IF I HAD A TIME MACHINE, GOSH, I WOULD

18   BE ABLE TO GO BACK IN TIME AND FIX LOTS OF

19   ISSUES.  AND I DON'T WANT YOU OR THE APPELLATE

20   COURTS TO THINK I DIDN'T HEAR YOUR ARGUMENTS,

21   BECAUSE I DID.

22        I HAVE LOOKED AT THE DIAGNOSES THAT

23   ARE IN THE REPORT AND, FRANKLY, MOST OF THEM ARE

24   NOT VERY SIGNIFICANT AS FAR AS DEALING WITH THIS

25   PARTICULAR ISSUE.   THERE ARE LOTS OF PEOPLE OUT

1    THERE THAT HAVE A DIAGNOSIS OF BEING DEPENDENT

2    UPON VIDEO GAMES AND ADDICTED TO VIDEO GAMES.

3    THEY EVEN HAVE A CAMP, I THINK, NOW TO GET PEOPLE

4    OFF VIDEO GAMES.  BUT THAT DOESN'T GIVE THEM A

5    LICENSE OR IT'S NOT A REASON FOR THEM TO GO OUT

6    AND MOLEST CHILDREN.  ANYWAY.

7              I AM ORDERING YOU REMANDED TO THE

8    CUSTODY OF THE BUREAU OF PRISONS TO BE IMPRISONED

9    FOR A PERIOD OF 30 YEARS AS TO COUNT ONE AND

10   FOUR.  THEY WILL RUN CONCURRENT WITH EACH OTHER.

11             AS TO 50 YEARS FOR COUNTS TWO AND FIVE,

12   THEY WILL RUN CONCURRENT WITH EACH OTHER.  AND

13   COUNTS ONE AND FOUR WILL RUN CONCURRENT WITH

14   COUNT TWO AND FIVE.

15             AND 20 YEARS AS TO COUNTS THREE AND

16   SIX, AND THEY WILL RUN CONCURRENT WITH THE OTHER

17   COUNTS.  SO A TOTAL SENTENCE OF 50 YEARS AS

18   REQUESTED BY THE GOVERNMENT.

19             WHEN YOU COMPLETE YOUR IMPRISONMENT,

20   YOU WILL BE PLACED ON SUPERVISED RELEASE FOR A

21   PERIOD OF YOUR LIFETIME.  YOU WILL BE SUBJECT TO

22   THE STANDARD AND MANDATORY CONDITIONS OF

23   SUPERVISED RELEASE OF RECORD IN THIS COURT AS

24   WELL AS THE SPECIAL CONDITIONS CONTAINED ON

25   COURT'S EXHIBIT ONE.

1        DOES HE HAVE THAT?

2             MR. GIBSON:  YOUR HONOR, I WAS HANDED

3    IT AS COURT WAS STARTED SO WE HAVE NOT HAD A

4    CHANCE TO REVIEW IT.  I'M SORRY.

5             THE COURT:  ALL RIGHT.  WOULD YOU

6    REVIEW IT WITH HIM, PLEASE?

7             MR. GIBSON:  CERTAINLY.

8                 (BRIEF PAUSE.)

9             MR. GIBSON:  YOUR HONOR, MR. BEATTY HAS

10   EXECUTED COURT'S EXHIBIT ONE.

11             THE COURT:  THANK YOU.  ALL RIGHT.  I

12   AM NOT GOING TO IMPOSE A FINE DUE TO HIS

13   INABILITY TO PAY A FINE.  RESTITUTION WILL BE

14   HELD OPEN FOR 90 DAYS.  THE SPECIAL ASSESSMENT

15   FEE IN THE AMOUNT OF $600 IS ORDERED; THE

16   DEFENDANT IS TO PAY THAT $100 PER COUNT TO THE

17   UNITED STATES GOVERNMENT.  THAT AMOUNT IS DUE

18   IMMEDIATELY.

19             DOES HE WANT ME TO ASK THAT HE BE

20   HOUSED AS CLOSE TO HUNTSVILLE AS I CAN GET HIM?

21             MR. GIBSON:  YOUR HONOR, HE WOULD LIKE

22   TO BE HOUSED IN A FACILITY THAT OFFERS THE SEX

23   OFFENDER MANAGEMENT PROGRAM OVER ANY GEOGRAPHIC

24   CONSIDERATIONS.

25             SECONDARILY, HIS BROTHER AND HIS WIFE,

1   WHO ARE IN COURT THIS MORNING FROM CLINTON,

2   TENNESSEE, WOULD LIKE TO -- RESIDE IN CLINTON,

3   TENNESSEE.  SO AS THE SECONDARY REQUEST, THAT

4   WOULD BE THE GEOGRAPHIC TIE WE WOULD ASK FOR.

5          THE COURT:  ALL RIGHT.  SO WE WILL ASK

6   THAT HE BE HOUSED AS CLOSE TO CLINTON, TENNESSEE,

7   AS WE CAN GET HIM EXCEPT THAT TO THE EXTENT THE

8   BUREAU OF PRISONS FINDS THAT HE IS TO RECEIVE THE

9   SEX OFFENDER TREATMENT, THAT WILL TAKE PRECEDENT

10  OVER ANY GEOGRAPHICAL REQUEST.

11         MR. GIBSON:  YES.

12         THE COURT:  DO YOU UNDERSTAND THE WAY I

13  SAID THAT?

14         THE CLERK:  YES.

15         THE COURT:  ANYTHING I HAVE MISSED FROM

16  THE GOVERNMENT?

17         MS. WHITE:  NO, YOUR HONOR, JUST

18  THAT --

19         THE COURT:  IS THERE A COUNT NEEDS TO

20  BE DISMISSED OR MORE?

21         MS. WHITE:  IS THERE -- I'M SORRY,

22  WHAT?

23         THE COURT:  ANY COUNTS THAT NEED TO BE

24  DISMISSED?

25         MS. WHITE:  YES, YOUR HONOR.  COUNTS --

```
1    MOVE TO DISMISS COUNTS SEVEN THROUGH SIXTEEN IN
2    THIS CASE, YOUR HONOR.
3              THE COURT:  THEY ARE DISMISSED.
4    ANYTHING ELSE?
5              MS. WHITE:  YOUR HONOR, I KNOW THAT YOU
6    SAID YOU GRANTED THE VARIANCE OR HAVE YOU GRANTED
7    THE VARIANCE TO THE 50 YEARS --
8              THE COURT:  THAT'S IMPLIED WITH MY
9    SENTENCE.
10             MS. WHITE:  YES, YOUR HONOR.  AND I WAS
11   UNCERTAIN OF WHETHER OR NOT THAT THE REASONS FOR
12   THAT VARIANCE WOULD NEED TO BE PLACED ON THE
13   RECORD AT SENTENCING.
14             THE COURT:  WELL, I THINK I MADE THAT
15   CLEAR AS WELL.  BUT THE DEFENDANT'S CONDUCT IS
16   HORRID.  AND THE SENTENCE, I FIND NOT TO BE
17   APPROPRIATE WHEN I CONSIDER ALL THE FACTORS IN
18   THE UNITED STATES CODE, INCLUDING THE SPECIFICS
19   OF THESE PARTICULAR OFFENSES AND HOW THE
20   DEFENDANT USED A CALCULATED METHOD TO VICTIMIZE
21   THESE CHILDREN.  HOW HE WAS GIVEN AN OPPORTUNITY
22   TO REALIZE THE ERROR OF HIS WAYS BACK IN 2012 AND
23   DEMONSTRATED THAT HE HAD NO INTENTION OF DOING
24   THAT BY CONTINUING THE CONDUCT.  I THINK ALL OF
25   THAT IS PLENTY SUFFICIENT TO CARRY IT.
```

1        LIKE I SAID, I WOULD HAVE GIVEN HIM FAR

2   MORE THAN 50 YEARS IN PRISON.

3        MS. WHITE:  YES, YOUR HONOR.  THANK

4   YOU.

5        THE COURT:  ANYTHING ELSE?  ANY

6   OBJECTION FROM ANY PARTY AS TO THE FINDINGS OF

7   FACT, THE CALCULATION OF THE SENTENCE, OR THE

8   MANNER IN WHICH THE SENTENCE WAS PRONOUNCED OR

9   IMPOSED OTHER THAN STATED ON THE RECORD?  FROM

10  THE GOVERNMENT?

11       MS. WHITE:  NO, YOUR HONOR.  BUT I

12  DID -- THERE SHOULD HAVE BEEN OR WILL BE A MOTION

13  FOR FORFEITURE IN THIS CASE FROM THE GOVERNMENT.

14       THE COURT:  FORFEITING ALL THE VIDEO

15  AND PHOTOGRAPHIC EVIDENCE AND SUCH AND COMPUTERS?

16       MS. WHITE:  YES, YOUR HONOR.  THE SMART

17  PHONES AND SIM CARDS AND THUMB DRIVES AND

18  TABLETS, THINGS THAT WERE OUTLINED IN THE PLEA

19  AGREEMENT.

20       THE COURT:  I WILL PRELIMINARILY ENTER

21  A FORFEITURE ORDER.  YOU NEED TO SEND ME A FINAL

22  ONE.  OKAY?

23       MS. WHITE:  THANK YOU, YOUR HONOR.

24       THE COURT:  UH-HUH.

25            ANY OBJECTION, JAMIE?

1          MR. GIBSON:  YES, SIR.  I OBJECT TO THE

2    UPWARD VARIANCE FOR THE REASONS I STATED.  IN

3    ADDITION, I THINK IT IS DISPARATE NATIONALLY.  I

4    THINK IT IS DISPARATE IN THIS DISTRICT,

5    PARTICULARLY GIVEN U.S. V. KIRKHAM CASE IN MY

6    SENTENCING MEMO WHICH THE DEFENDANT RECEIVED A

7    365 MONTH SENTENCE.

8          THE COURT:  ANYTHING ELSE?

9          MR. GIBSON:  IF I MAY CHECK; ONE

10   MOMENT.

11         NOTHING I WOULD SAY, YOUR HONOR.  I

12   DON'T BELIEVE THE SENTENCE ACCOUNTS FOR

13   MR. BEATTY'S HISTORY AND CHARACTERISTICS, TO THE

14   EXTENT OF HIS MENTAL ILLNESSES AND THE

15   POSSIBILITY, OR THE VERY STRONG POSSIBILITY THAT

16   TREATMENT WOULD MITIGATE ANY RISK OF RECIDIVISM,

17   PARTICULARLY GIVEN HIS AGE AT RELEASE UNDER OUR

18   REQUESTED SENTENCE.  BUT I UNDERSTAND THE COURT'S

19   RULING.

20         THE COURT:  YOU HAVE THE RIGHT TO

21   APPEAL THE SENTENCE IMPOSED IF YOU BELIEVE IT'S

22   IN VIOLATION OF THE LAW; HOWEVER, YOU'VE GOT TO

23   DO THAT WITHIN 14 DAYS OF JUDGMENT BEING ENTERED

24   IN YOUR CASE.  IF YOU DON'T HAVE THE ABILITY TO

25   PAY THE COST OF AN APPEAL, YOU MAY APPLY FOR

```
1    LEAVE TO APPEAL IN FORMA PAUPERIS AND FOR THE

2    APPOINTMENT OF COUNSEL.  IF GRANTED, THE CLERK OF

3    COURT WILL ASSIST YOU IN PREPARING AND FILING

4    YOUR NOTICE OF APPEAL.

5              ALL RIGHT.  THANK YOU ALL.

6              MS. WHITE:  THANK YOU, YOUR HONOR.

7                  (COURT IN RECESS.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   **************************************************

 2               C E R T I F I C A T E

 3   **************************************************

 4   IN RE:    USA V. JUSTIN DAVID BEATTY

 5   CASE #:   5:19-CR-482-LSC-HNJ

 6

 7            I HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT

 8   IN THE ABOVE-STYLED CAUSE IS TRUE AND CORRECT.

 9

10   _____           JULY 12, 2021

11   LINDY M. FULLER, RMR, CRR, CRC

12   FEDERAL OFFICIAL COURT REPORTER

13   HUGO L. BLACK U.S. COURTHOUSE

14   1729 5TH AVENUE NORTH

15   BIRMINGHAM, ALABAMA  35203

16

17

18

19

20

21

22

23

24

25
```